UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FNU DHONDUP NAMGYAL,<br><br>       Plaintiff,<br><br>   v.<br><br>UR M. JADDOU, et al.,<br><br>       Defendants. | Case No.  23-cv-02856-LJC<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: ECF No. 11 |

On June 9, 2023, Plaintiff Dhondup Namgyal petitioned the Court for *de novo* review of his application for naturalization pursuant to 8 U.S.C. § 1447(b).  ECF No. 1 (Compl.) ¶¶ 12-13. Alternatively, Mr. Namgyal requested that the Court compel United States Citizenship and Immigration Services (USCIS) to immediately adjudicate his application for naturalization pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 706(1).  Id. ¶¶ 14-19.  On August 18, 2023, Defendants[1] filed a Motion to Remand the matter to USCIS, contending the agency is prepared to adjudicate Mr. Namgyal's application for naturalization within thirty days from the issuance of this Order.  ECF No. 11.  Mr. Namgyal filed an Opposition asserting his position against remand (ECF No. 12), and Defendants filed a Reply. ECF No. 13.  The Court held a hearing on September 19, 2023.  ECF No. 15.  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). ECF Nos. 5, 10.  For the reasons set forth below, Defendants' Motion to Remand is **GRANTED**.

//

---

[1] Defendants in this matter are Ur M. Jaddou, Director of USCIS; Robin Barrett, District Director of the USCIS San Francisco Field Office; and Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security.

## I. BACKGROUND

Mr. Namgyal is a 42-year-old national of India of Tibetan descent. ECF No. 12-1 at 10.[2] He became a legal permanent resident through marriage to a U.S. Citizen, Sherab Dolma. Id. They married in Dehradun, India on November 5, 2012. Id. In January 2013, she filed an I-130 Petition for Alien Relative to bring him to the United States to live with her. Id. The I-130 Petition was approved on Valentine's Day, 2014, and two years later, the U.S. State Department issued an immigrant visa for Mr. Namgyal to enter the United States. Id. In 2018, however, Mr. Namgyal and his wife divorced. Id. On or about December 4, 2020, Mr. Namgyal filed his Form N-400, Application for Naturalization. Id. at 8. Mr. Namgyal had his naturalization interview at the USCIS Field Office in San Francisco, California on February 4, 2022. Id. at 10. Since then, no other action has been taken on his case. Id.

Mr. Namgyal made many queries to USCIS through their case status request tool as to why his case is taking longer than usual to process but received no response. Id. During the wait, Mr. Namgyal's travel document from India expired, which has made him unable to travel home to visit his ailing mother. Id. at 11. As a Tibetan, the Indian consulate will not give Mr. Namgyal another travel document if he is not in India. Id. He also cannot procure a travel document from the United States prior to naturalization. Id.

Defendants acknowledge that Mr. Namgyal's application has been pending beyond the average processing time for Forms N-400 at the San Francisco USCIS Field Office. ECF No. 11-1. They attribute the delay to "a USCIS investigation regarding [Mr. Namgyal's] eligibility for naturalization, including whether he was lawfully admitted for permanent residence." Id. USCIS has since concluded its investigation and has indicated on the record that it is not aware of any basis that precludes a grant of Mr. Namgyal's application for naturalization. Id.

Upon hearing no response from USCIS to his case status queries, Mr. Namgyal sought counsel in May 2023. ECF No. 12-1 at 11. His attorney sent a copy of his draft federal complaint to USCIS on May 20, 2023. Id. On June 8, 2023, Mr. Namgyal received a call from his ex-wife,

---

[2] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-filing system.

Ms. Dolma, informing him that two USCIS agents had had gone to her house to ask questions about him. Id. At the time, she was at work, but they proceeded to question her current partner, who was home. Id. The USCIS agents obtained Ms. Dolma's phone number, and called and left her a voicemail message, urging her to call them back to answer questions about Mr. Namgyal. Id. At the hearing, counsel for Defendants indicated that the site visit to Ms. Dolma's home had been scheduled prior to USCIS's receipt of Mr. Namgyal's draft complaint. Counsel also confirmed that the USCIS agents did speak with Ms. Dolma over the phone, after which the agency concluded its investigation, all in the same day.

Mr. Namgyal filed his Complaint the next day, on June 9, 2023. See Compl. No proof of service has been filed with the Court, but Mr. Namgyal states in his Opposition that Defendants were properly served. ECF No. 12 at 11. According to Defendants, on July 12, 2023, they offered Mr. Namgyal the same remand terms they propose now (adjudication of his application for naturalization within thirty days), to be included in a proposed stipulation to remand, which he rejected. ECF No. 11 at 7, n.2.[3] Defendants have not filed an answer to the Complaint.

## II. LEGAL STANDARD

If USCIS fails to adjudicate a naturalization application within 120 days after the date on which the agency's examination is conducted, an applicant may obtain a hearing in district court. See 8 U.S.C. § 1447(b). "Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." Id. The "examination" referred to in Section 1447(b) is the initial interview scheduled under 8 U.S.C. § 1446. See United States v. Hovsepian, 359 F.3d 1144, 1151–52 (9th Cir. 2004).

To obtain U.S. citizenship, an applicant must satisfy several requirements, including the requirement of establishing that they are "a person of good moral character." 8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a)(7). The applicant must also show that they have "resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five

---

[3] Defendants cite to a declaration from their counsel, Elizabeth Kurlan. There is no such declaration attached to the Motion to Remand, or to the Court's knowledge, anywhere else in the docket.

1  years...." 8 U.S.C. § 1427(a). Before granting a naturalization application, USCIS must conduct a

2  personal investigation of the applicant consisting of, at a minimum, review of all pertinent records.

3  See 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.

**III.  DISCUSSION**

### A. Remand to USCIS

In this case, over 120 days have passed since Mr. Namgyal's naturalization interview on February 4, 2022. Therefore, under Section 1447(b), the Court has jurisdiction to either determine or remand the matter. "Although district courts have jurisdiction to decide applications for naturalization, the vast majority of courts remand these matters to the USCIS to decide in the first instance whether to grant or deny citizenship." Maniulit v. Majorkas, No. 3:12-CV-04501-JCS, 2012 WL 5471142, at *3 (N.D. Cal. Nov. 9, 2012). The Court finds that remand to USCIS, rather than judicial determination of Mr. Namgyal's application for naturalization, is the more appropriate course of action here.

First and foremost, this Court has remanded naturalization applications to USCIS on numerous occasions in deference to the agency's expertise in investigation, fact-finding, and adjudication of applications for naturalization. See, e.g., id. ("The executive branch is in a better position than this Court to decide [the p]laintiff's application for [naturalization]") (citing I.N.S. v. Orlando Ventura, 537 U.S. 12, 17 (2002)); Deng v. Chertoff, No. C 06-7697 SI, 2007 WL 1501736, at *1 (N.D. Cal. May 22, 2007) ("The Court finds it appropriate to remand this action to USCIS because that agency has considerably more expertise than the Court in adjudicating naturalization petitions"); Reddy v. Mueller, 551 F. Supp. 2d 952, 953 (N.D. Cal. 2008) ("Since USCIS processed [the p]laintiff's application, conducted his interview and orchestrated his background investigation…USCIS is the government entity best equipped to adjudicate [his] application.")

Mr. Namgyal argues that USCIS can utilize its expertise here by presenting the agency's findings as to his naturalization application to the Court, for example, the results of its background check investigations. ECF No. 12 at 8 (citing Etape v. Chertoff, 497 F.3d 379, 387 (4th Cir.2007)). However, even with the benefit of USCIS's fact-finding, the Court's *de novo* review

4

1  will more likely than not take longer than thirty days and further delay adjudication of Mr.
2  Namgyal's application. See Sayed v. Chertoff, No. C 07-03455 WHA, 2008 WL 2788317, at *3
3  (N.D. Cal. July 18, 2008) ("Given that plaintiffs' administrative record has not yet been filed with
4  the Court, and the Court would likely have to conduct a *de novo* hearing following receipt of the
5  record and any discovery by the parties… [USCIS] is in the best position to expeditiously
6  determine this matter"); Omran v. Dep't of Homeland Sec., No. 1:07-CV-187, 2008 WL 320295,
7  at *6 (S.D. Ohio Feb. 4, 2008) (refusing to issue remand, setting hearing to "determine the matter"
8  of the plaintiff's application for naturalization, and setting status conference "to discuss discovery,
9  set a briefing schedule, and establish parameters for the hearing.")  On the other hand, USCIS is
10  ready to adjudicate Mr. Namgyal's naturalization application within thirty days of remand, which
11  is a "stated commitment to quickly process [his] application." Elias v. Ow, No. 22CV1012-JO-
12  RBB, 2022 WL 17069841, at *2 (S.D. Cal. Nov. 16, 2022) (remanding with order that USCIS
13  adjudicate naturalization application within thirty days).

14  One of Mr. Namgyal's primary concerns is that remand will lead to further delay if USCIS
15  denies his naturalization application and he is forced to exhaust his administrative remedies before
16  returning to this Court again. ECF No. 12 at 11.  He relies on Yith v. Nielsen, 343 F.Supp.3d 938
17  (E.D. Cal. 2018), where the district court refused to remand and "create another administrative
18  hurdle for [p]laintiffs who have already been [] subject to long delays…" Id. at 950.  However,
19  there, USCIS had issued a Notice of Intent to Deny (NOID). Id. at 949.  No NOID has been
20  issued here nor has USCIS at any point represented to the Court that it intends to deny Mr.
21  Namgyal's naturalization application.  To the contrary, USCIS has represented to the Court on the
22  record that it is "not aware of any basis that precludes a grant of [Mr. Namgyal's] application for
23  naturalization." ECF No. 11-1.  This assuages any concerns the Court may have had that there is a
24  risk of "unnecessary waste of judicial resources if the matter is remanded only to land back before
25  the district court after an additional layer of administrative appeals." Yith, 343 F.Supp.3d at 950.

26  Mr. Namgyal's fear of a denial stems from what he characterizes as USCIS's "clandestine
27  investigation" into his and his ex-wife's marital affairs, specifically, whether his marriage to Ms.
28  Dolma was bona fide. ECF No. 12 at 9.  Mr. Namgyal challenges USCIS's decision to question

his ex-wife and her current partner as "unnecessary, abusive, and show[ing] a lack of respect for the law." Id. at 10.

Mr. Namgyal does not cite to any legal authority proscribing USCIS's ability to question witnesses who voluntarily agree to talk to its agents, as part of the agency's investigatory power when it comes to adjudicating naturalization applications. There is no evidence to suggest that Ms. Dolma and her partner's decision to speak with the USCIS agents was not voluntary. Moreover, USCIS has the authority to investigate the circumstances of how Mr. Namgyal became a permanent resident. See 8 C.F.R. § 335.1 (providing that USCIS's investigation of a naturalization applicant "shall consist . . . of a review of all pertinent records . . . for at least the five years immediately preceding the filing of the application.") Accordingly, there is nothing before the Court indicating that USCIS acted unlawfully or inappropriately in how it gathered information for its background investigation into Mr. Namgyal's eligibility for naturalization.

Mr. Namgyal also argues that remand is not warranted in this case because the delay in adjudication of his naturalization application is substantial and unreasonable. ECF No. 12 at 5. Under Section 1447(b), USCIS was required to adjudicate Mr. Namgyal's naturalization application by June 4, 2022. Twelve months had lapsed when he filed his Complaint, and fifteen months have passed as of the date of this Order.[4] This is less than the delay in the cases cited by Mr. Namgyal where remand was denied. See Kim v. McAleenan, No. 1:19-CV-01212-SKC, 2020 WL 1026494, at *3 (D. Colo. Mar. 3, 2020) (finding the equities of the case weighed in favor of remand because of a three-year delay combined with a "cursory" explanation from USCIS regarding an ongoing investigation that did not allow the district court to conclude that the significant delay was necessary); Negam v. United States, 480 F. Supp. 2d 877, 884 (N.D. Tex. 2007) (denying remand because of an almost two-year delay due to incomplete background

---

[4] Although almost three years have passed since Mr. Namgyal first filed his naturalization application (ECF No. 12 at 5), as he is aware, Section 1447(b)'s 120-day period begins running from the date of the initial interview, not the date of filing. See Hovsepian, 359 F.3d at 1151–52. The Court calculates the delay beginning from June 4, 2022, which is 120 days *after* the initial interview. Mr. Namgyal's emphasis on how more than sixteen months "have lapsed since the date of [his] interview without agency action" is similarly misplaced. ECF No. 12 at 5. The Court does not seek to condone or normalize agency delay that exceeds the timeline Congress has authorized. Yet, it also important to describe the delay with precision.

checks, and the defendants "failed to give the court or [the plaintiff] any assurance" as to when the background checks would be finished).[5]

More importantly, here, Defendants have provided an explanation for the delay. USCIS undertook an investigation concerning whether Mr. Namgyal was lawfully admitted for permanent residence, and the investigation has since concluded. ECF No. 11-1. The Court has no reason to believe that the investigation was unnecessary or somehow unreasonably contributed to the delay in adjudicating Mr. Namgyal's naturalization application. To the contrary, part of the delay may come from the actions of Mr. Namgyal himself. Defendants claim he was offered the same remand terms they propose now (adjudication within thirty days) back in July of this year, which he rejected. ECF No. 11 at 7, n.2. Had those terms been accepted, the delay would have been limited to approximately fourteen months. The Court is aware that "remand will not guarantee the favorable decision" Mr. Namgyal seeks, but it will "partially satisfy [his] request by compelling USCIS to reach a decision on [his] application within thirty days." Karim v. United States Dep't of Homeland Sec., No. SACV0700766CJCANX, 2008 WL 11342838, at *2 (C.D. Cal. June 12, 2008); see also Compl. ¶¶ 14-16 (asserting mandamus cause of action which sought prompt adjudication by USCIS because "this Court has jurisdiction to compel Defendants to adjudicate naturalization application within a reasonable period of time.")

Finally, Mr. Namgyal attempts to distinguish the Section 1447(b) cases remanding naturalization applications to USCIS by arguing that in most of those cases, agency investigations and/or security checks were not completed, or some new information had come to light that required further agency discernment. ECF No. 12 at 6. But here, all necessary background checks, investigations, and interviews have been completed. Id. at 7. However, "even in cases where the background checks were still pending, the courts also considered USCIS's general

---

[5] Mr. Namgyal also cites to Shalan v. Chertoff, No. CIV.A. 05-10980-RWZ, 2006 WL 42143 (D. Mass. Jan. 6, 2006) and claims that the "extensive delay" there was six months. ECF No. 12 at 5. However, no such time period is mentioned in the district court's order. The initial interview occurred on November 3, 2004, and USCIS had not yet issued a decision as of the date of the order (January 6, 2006). 2006 WL 42143, at *1.

7

expertise on immigration matters to be an important reason why the agency should be the first to determine an individual's application. A background check is just one of many factors USCIS looks into before deciding whether to grant or deny an application for naturalization." Maniulit, 2012 WL 5471142, at *4 (internal citation omitted). Mr. Namgyal draws the Court's attention to Taalebinezhaad v. Chertoff, 581 F. Supp. 2d 243 (D. Mass. 2008), where the district court denied remand and decided to adjudicate the naturalization application itself because security checks were no longer pending. However, in Taalebinezhaad, the naturalization application had been pending for over two years and the court "remained unconvinced after oral argument that [the] application would necessarily be handled with alacrity if it were to remand the case to USCIS." Id. at 246. There is no such uncertainty here—USCIS is prepared to adjudicate Mr. Namgyal's naturalization application within thirty days from this Order.

Given all the above, the Court finds that remanding Mr. Namgyal's naturalization application to USCIS is the most appropriate way to proceed so that the agency can decide the matter in the first instance.[6]

### B.   Remand with a Writ of Mandamus

In his Opposition, Mr. Namgyal requests alternative relief—should the Court decide to remand, Mr. Namgyal requests an order compelling USCIS "to grant his N-400…and place him in line for an oath ceremony to be conducted within 15 days." ECF No. 12 at 4. As an initial matter, the Court agrees with Defendants that such relief is not consistent with its statutory authority. See 8 U.S.C. § 1447(b) ("[The court] may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] *to determine the matter*") (emphasis added).

Moreover, Defendants correctly point out that the type of mandamus relief Mr. Namgyal seeks is inappropriate in this case. ECF No. 13 at 6-7. "Mandamus is an extraordinary remedy. A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is clear and certain; (2) the defendant official's duty to act is ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." Barron v. Reich, 13 F.3d 1370, 1374 (9th

---

[6] Because the Court is remanding the matter to USCIS, Defendants' request for a thirty-day extension to answer or otherwise respond to Mr. Namgyal's Complaint (ECF No. 11 at 2) is moot.

Cir. 1994) (internal quotation marks and citation omitted).  While USCIS "has a non-discretionary duty to…reach *some* decision on an application" for naturalization, "the ministerial duty to reach a decision on an application is quite distinct from the discretionary duty of determining what that decision will be."  Karim, 2008 WL 11342838, at *2.  Mr. Namgyal has not demonstrated that mandamus relief is appropriate here.

### C. Name Change

Mr. Namgyal separately argues that it is appropriate in this case to deny Defendants' request for a remand because only the Court has jurisdiction to order a name change under 8 U.S.C. § 1447(e) (providing that the district court, as part of the oath of allegiance, and "upon the bona fide prayer of the applicant included in an appropriate petition to the court," can "make a decree changing the name of said person, and the certificate of naturalization shall be issued in accordance therewith.")  Mr. Namgyal wishes to correct his legal name from "FNU Dhondup Namgyal" to "Dhondup Namgyal."  ECF No. 12 at 12-13.  Alternatively, if the Court chooses to remand the matter to USCIS, Mr. Namgyal requests that it provide an instruction to USCIS to correct his name for the record.  Id. at 13.  According to Defendants, "[a]side from the fact that [he] initiated this action as 'FNU Dhondup Namgyal,' [Mr. Namgyal] does not acknowledge there has not yet been a determination by either the Court (or USCIS following remand) that [he] is entitled to a certificate of naturalization."  ECF No. 13 at 6, n.2.

At the hearing, counsel for Defendants indicated that in the event USCIS approves Mr. Namgyal's application for naturalization on remand, there is a process in place to ensure the correct name appears on his certificate of naturalization.  Accordingly, the Court finds that the issue of Mr. Namgyal's name change does not warrant retaining jurisdiction of this matter at this time.

//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Remand is **GRANTED** in its entirety. USCIS is hereby ordered to adjudicate Mr. Namgyal's application for naturalization within thirty days of this Order.

**IT IS SO ORDERED.**

Dated: September 21, 2023

LISA J. CISNEROS
United States Magistrate Judge